**In re GIL–BERN INDUSTRIES, INC., et al., Debtors.**

**Appeal of EQUIPMENT MART OF NEW YORK # 2, INC.**

**No. 75–1324.**

United States Court of Appeals, First Circuit.

Argued Nov. 6, 1975.

Decided Dec. 4, 1975.

Richard S. Daniels, Jr., Boston, Mass., for appellant.

Thomas J. Raftery, Boston, Mass., with whom Robert M. Gargill and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

This appeal from an order confirming a sale of tangible personal property by a bankruptcy receiver to appellant pursuant to its bid of $452,888, posits the claim that appellant should have been allowed to acquire the property for $438,000, its prior bid. The facts upon which this somewhat unusual contention is based are these.

On May 8, 1974 the bankruptcy judge issued a notice to the effect that certain

specified property would be sold, free and clear of liens; that the receiver had received an offer of $427,000, and that "[o]bjections, if any, to confirmation of the proposed sale . . . and all counter-offers for the purchase of [said] property shall be made in writing and filed on or before 11:00 A. M. May 29 . . . . Objections and counter-offers, if any are filed, will be heard at 2:00 P. M. on May 29." Appellant, prior to 11 A. M., presented a written bid in the amount of $438,000, and thereafter attended the 2 o'clock hearing. At that hour its bid was the highest received.

At the hearing the party who had submitted the initial offer of $427,000 sought to submit a higher one. The bankruptcy judge permitted it to do so, and it then bid $451,000. Appellant protested, and under protest, made a new offer of $452,888. This bid was not surpassed. The bankruptcy judge thereupon confirmed the sale to appellant on its final bid. Its order was affirmed by the district court.

Our first question on this appeal is the reasonable meaning of the notice. Did it mean that all bidding was to close, finally, at 11 o'clock, or that it could be reopened at 2 o'clock? If the former, was the court bound to accept the highest 11 o'clock bid unless some specific objection was advanced? If the latter, could the bidding be reopened freely in the discretion of the judge, or must some special reason for reopening appear?

We think the prima facie meaning of the requirement that bids and objections had to be received by 11 o'clock, with a three hour interval before the confirmation hearing, was that the bidding was to close at 11 o'clock, with the three hours provided to permit consideration of objections. At the same time, the obvious fact that the bankruptcy judge was going to pass upon the bid must mean that the highest bid was not to be automatically accepted. It follows that any bidder was to be charged with knowledge of any known criterion or practices that would limit confirmation.

■ It is hornbook law that if the highest bid submitted at a judicial sale is manifestly inadequate, it need not be accepted. *Blossom v. Railroad Co.*, 1866, 3 Wall. (70 U.S.) 196, 18 L.Ed. 43; *Century Motor Truck Co. v. Noyes*, 1 Cir., 1927, 18 F.2d 546; *Jacobsohn v. Larkey*, 3 Cir., 1917, 245 F. 538; *Coulte v. Blieden*, 8 Cir., 1939, 104 F.2d 29, *cert. denied*, 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 488. During oral argument it was suggested, although not shown, that the local practice goes much further than this, and that further offers may be received at the confirmation hearing even though the highest bid submitted at closing time was entirely fair and adequate. If there were such a known custom, we think the notice is sufficiently ambiguous not to preclude it. Nor was appellant prejudiced by its ignorance, since it was present, and bid. (Non constat that it would not have been better that such were disclosed in the notice. *See In re Strand Theatre, Inc.*, S.D.N.Y., 1952, 109 F.Supp. 350, 353, *aff'd mem. on opinion below*, 2 Cir., 1953, 201 F.2d 889, *cert. denied sub nom., Ratett v. Kaplan*, 345 U.S. 995, 73 S.Ct. 1137, 97 L.Ed. 1402.) If there was no such practice, we hold that the prima facie meaning of the notice was counter to a free reopening of the bidding.

■ We, of course, recognize that the court is not bound by contract law to accept the highest offer, *see, e. g.*, 1 Corbin on Contracts §§ 24, 25, 108 (1963 ed.); *Blossom v. Railroad Co.*, ante; *Weinstein v. Green*, 1964, 347 Mass. 580, 582, 199 N.E.2d 310; 199 N.E.2d 310, 311 (dictum), and that the highest bidder in a judicial sale has not even equitable title until the sale is confirmed by the court, 11 U.S.C. § 110(f); *Century Motor Truck Co. v. Noyes*, ante; *see Blossom v. Railroad Co.*, ante. Nonetheless, it is important that the bidder receive what he had reason to expect, and that nothing impair public confidence in the regularity of judicial sales. While a court may refuse to confirm an inadequate bid or an improper sale, *Century Motor Truck Co. v. Noyes*, ante; *In re Shea*, 1 Cir., 1903, 126 F. 153; *Jacobsohn v. Larkey*,

ante; *Coulter v. Blieden*, ante, or even an apparently adequate bid if there is a substantial disparity between it and a subsequent offer, *Reid v. King*, 4 Cir., 1946, 157 F.2d 868, none of these has been shown to exist here.

If there is no local custom to the contrary, we are in accord with the established rule that it is an abuse of discretion for a bankruptcy court to refuse to confirm an adequate bid received in a properly and fairly conducted sale merely because a slightly higher offer has been received after the bidding is closed. *In re Stanley Eng'r Corp.*, 3 Cir., 1947, 164 F.2d 316, 319–20 (en banc), *cert. denied sub nom. Root v. Galman*, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417; *Graffam v. Burgess*, 1886, 117 U.S. 180, 191–92, 6 S.Ct. 686, 29 L.Ed. 839 (dictum); 4A Collier on Bankruptcy § 70.98, at 1190 (14th ed.). *See also Shlensky v. H. R. Weissberg Corp.*, 7 Cir., 1969, 410 F.2d 1182, 1185–86, *cert. denied sub nom., Rosenthal v. Ash*, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 85. It might not only be thought improper for a bankruptcy court to proceed in an irregular fashion merely to gain a few extra dollars in one case, but in the long run such a practice would be penny wise and pound foolish. Creditors in general would suffer if unpredictability discouraged bidders altogether. At the least such practices might encourage low formal bids. *See In re Stanley Eng'r Corp.*, ante, 164 F.2d at 319. We would not approve such a procedure. Nor was appellant, whipsawed at the confirmation hearing by the impropriety, if there was impropriety, to be charged with waiver by making a further bid under protest. *In re Stanley Eng'r Corp.*, ante, 164 F.2d at 320.

The order confirming the sale to appellant for $452,888 is set aside, and the cause remanded to the district court for further proceedings. If it is found that there was a known practice of receiving further bids at confirmation hearings, the order of the bankruptcy judge is to be affirmed. If not, a sale to appellant on its $438,000 bid is to be confirmed.