In re SACO LOCAL DEVELOPMENT CORP., Leather Comfort Corporation, Kirstein Leather Co., d/b/a Saco Tanning Corp., Kirstein Split Corporation, Debtors.

SACO LOCAL DEVELOPMENT CORP., Leather Comfort Corporation, Kirstein Leather Co., d/b/a Saco Tanning Corp., Kirstein Split Corporation, Plaintiffs,

v.

ARMSTRONG BUSINESS CREDIT CORP., M. Aschheim Co., Inc., Economic Development Administration, City of Saco, Lazere Financial Corporation, Maine Guaranty Authority, Mutual Life Insurance of New York, Defendants.

Bankruptcy Nos. 281–00151 to 281–00154.

United States Bankruptcy Court, D. Maine.

April 14, 1981.

Gerald S. Cope, Portland, Me., Alan L. Lefkowitz, Gaston, Snow & Ely Bartlett, Boston, Mass., for debtors.

George Marcus, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., Jon D. Schneider, Goodwin, Procter & Hoar, Boston, Mass., for Armstrong Business Credit Corp. and Lazere Financial Corp.

Frederick G. Fisher, Jr., Mark Polebaum, Hale & Dorr, Boston, Mass., for M. Aschheim Co., Inc.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., for Economic Development Admin.

Ronald Ayotte, Saco, Me., for City of Saco.

Charles H. Abbott, Lewiston, Me., for Maine Guaranty Authority and Mut. Life Ins. of New York.

Andrew Cadot, Portland, Me., for J. W. Penney & Co.

Gregory Tselikis, Charles Miller, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for Creditors' Committee.

U. Charles Remmel, III, Kelly, Remmel & Zimmerman, Portland, Me., Barry M. Portnoy, Sullivan & Worcester, Boston, Mass., for NKL Tanning.

P. Benjamin Zuckerman, Verrill & Dana, Portland, Me., for Saco Leather.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

These Chapter 11 Debtors filed their voluntary petitions on March 26, 1981 and orders for relief under Chapter 11 were entered on that date. Joint administration of the estates for procedural purposes has been ordered. On the same date the Debtors filed a Complaint to Sell most of their assets free and clear of certain liens and encumbrances and subject to certain liens and encumbrances. With the Complaint was a motion to shorten time for notice and hearing on their Complaint on the ground that failure to promptly obtain the relief requested would seriously jeopardize their chances of a successful reorganization.[1] Attached to the Debtors' Complaint was an offer to purchase the Debtors' assets which by its terms was to expire at 5:00 P.M. on Monday, April 13th. After hearing the Debtors' motion the Court ordered a hearing on their Complaint on April 6, 1981 at 10:00 A.M. Notice of the intended sale was mailed to all creditors and interested parties on March 26, 1981.

Objections to the proposed sale were filed by the U.S. Trustee, the Creditors' Committee and several creditors prior to the hearing, which was commenced on April 6, 1981 as scheduled.

Meanwhile, on April 2, 1981, Saco Leather Products Co., Inc. presented an offer to purchase the same assets. Immediately prior to the scheduled hearing on April 6, 1981, NKL, the original bidder, filed an amended offer and during the course of the hearing, which extended well into the evening hours, Saco Leather Products, in letter form, amended its original offer.

Because neither offer appeared to be satisfactory to the Court and the various factions present at the extended hearing, the Court adjourned the hearing to Friday, April 10th at 1:00 P.M. and ordered that any and all interested parties enter final sealed bids with the Clerk of the Bankruptcy Court on or before 4:00 P.M. on Wednesday, April 8, 1981. On Wednesday, April 8, 1981, shortly after 4:00 P.M. the Clerk of the Bankruptcy Court opened the sealed bids. Again, there were only two bidders, NKL and Saco Leather.

Fifteen minutes later, at 4:15 P.M., NKL filed a Complaint against Saco Leather Products, Co. and others affiliated with Saco Leather alleging violations of the Sherman Anti-trust Act, the Clayton Anti-trust Act, and the Hart-Scott-Rodino Anti-trust Act. On the next day NKL filed a Verified Motion for a Temporary Restraining Order against Saco Leather and affiliates, based upon alleged violations of the Federal Anti-trust Acts and alleging immediate and irreparable injury, loss or damage to NKL in the event Saco Leather Products Co., or its affiliates were permitted to purchase the assets of the Debtors.

The Court assigned NKL's Motion for a Temporary Restraining Order for hearing on Friday, April 10th at 1:00 P.M., the same time scheduled for the adjourned hearing on the sale of the Debtors' assets.

The Court took out evidence on NKL's Motion for a Temporary Restraining Order and took the matter under advisement, indicating that a decision would be rendered on the motion the following day, Saturday, April 11th. The Court then proceeded with the adjourned hearing on the sale of the Debtors' assets. Most of that hearing dealt with an analysis by various parties of the merits of the competing bids and discussion of questions raised by counsel for the Creditors' Committee and counsel for the Debtors. Both counsel for the Debtors and counsel for the Creditors' Committee stated that they had carefully reviewed both bids. Both acknowledged that they were "good offers." However, counsel for the Debtors favored the NKL bid and counsel for the Creditors' Committee favored Saco Leather's bid, subject to resolution of various questions.

---

1. At the same time Debtors, because of lack of operating funds, filed an application for authority to borrow.

One serious question regarding Saco Leather's bid dealt with the availability of a parking lot which is vital to the successful, or at least convenient, operation of the tannery. During the course of the proceedings it developed that the parking lot was not owned by the Debtors, but rather, was owned by the Turkanis family, principals of the Debtors. NKL's bid did not deal with the parking lot problem because, apparently, some arrangement had been made with regard to the parking lot. However, Saco Leather had been unable to resolve the parking lot problem and counsel for Saco Leather said it would not be prepared to close until the parking lot problem had been resolved.

During the course of the hearing, at 6:32 P.M., the Creditors' Committee filed with the Court, a Complaint against various members of the Turkanis family, title holders to the parking lot, seeking, among other things, to impose a constructive trust for the benefit of the Debtors. Counsel for the Creditors' Committee requested an immediate hearing on its Complaint, which the Court denied. However, the Court announced that a pretrial conference would be held on the Creditors' Committee's Complaint at 9:30 A.M. on Monday, April 13th.

Various other questions were raised with regard to Saco Leather's offer which will be discussed later.

At approximately 8:30 P.M. on Friday, April 10th the evidence was closed on the hearing relating to the sale of the Debtors' assets and the Court announced that in the event NKL's Motion for a Temporary Restraining Order was denied the Court would proceed with its decision on which bid should be accepted.

On the next day, Saturday, April 11th, the Court entered its order denying NKL's Motion for a Temporary Restraining Order and took under consideration both NKL's and Saco Leather's bids. Both bids, understandably, were quite complex. NKL's bid, however, did not contain the ambiguities present in Saco Leather's bid.

NKL's bid provided for assumption or satisfaction of the Debtors' major secured debt, totalling approximately $4,652,600. In addition, NKL's bid provided for a minimum payment to the estate of $1,007,000, $770,000 of which was to be paid in cash payable at the closing and $230,000 payable in five equal annual installments.

Saco Leather's bid provided for a cash payment of $1,250,000 at the closing. It was because of the immediate cash payment that the Creditors' Committee favored this bid. A careful review of Saco Leather's bid, however, left several unresolved ambiguities which could seriously erode this cash payment to the estate and seriously reduce any dividend to unsecured creditors. Several other unresolved problems could delay the sale, necessitating further borrowing by the Debtors or result in closure of the plant for lack of operating funds. These will be discussed in the order in which they appear in Saco Leather's bid.

First, there is the problem of the parking lot. At the time of the consideration of the competing bids, Saco Leather had not resolved the parking lot problem with the Turkanis family and had stated at the hearing that it would not close without a resolution of this problem. This could result in an interminable delay which would mean further borrowing by the Debtors in order to finance its operation or, eventual closing of its plant.

The next item of concern to the Court was that Saco Leather, at the time of the hearing, had not come to a firm agreement with the Economic Development Administration of the United States Department of Commerce (EDA). EDA holds a security interest in certain of the Debtors' assets and failure to come to an agreement with EDA could again delay the sale.

Saco Leather's proposal dealing with the secured debt of Armstrong Business Credit Corp. and Lazere Financial Corp. is extremely ambiguous. Armstrong and Lazere have financed the Debtors' operations since the filing of the Chapter 11 petitions and the Court has authorized borrowing by the Debtors from Armstrong and Lazere not to exceed $900,000. Armstrong and Lazere

hold pre-petition secured debt in the amount of $1,518,000. Saco Leather's bid proposed to assume the indebtedness to Armstrong and Lazere "in an amount not exceeding $1,793,572.55 plus loans from Armstrong to Debtors made after April 6, 1981 (*if approved by buyer*)." (empha.sis added) If buyer, meaning Saco Leather, disapproved of the Debtors' borrowing, pursuant to this Court's authorization, after April 6, 1981, this could delay the sale and possibly burden the estate with debt entitled to Section 364(c)(1) priority in excess of $500,000. The latter could result in serious diminution of the estate. The Debtors' post-petition borrowings amounted to $328,-000 at the time of the hearing on April 6th. The Court, on application of the Debtors, authorized a further borrowing up to $900,-000 on April 7th.

After having carefully reviewed the two bids the Court was faced with several alternatives. The first, of course, was to reject both bids and order further bidding in an effort to resolve some of the ambiguities. Another alternative was to order further hearings on the bids.[2] A further alternative was to order acceptance of Saco Leather's bid and hope that the questions and ambiguities could be resolved before the closing. Each of these alternatives were rejected by the Court as being unfair to NKL which had obviously made an effort to minimize terms and conditions in its bid.

■■■ The Court concluded that in fairness to NKL which had, pursuant to the Court's order, submitted its final, sealed bid and because of the importance and necessity of protecting the integrity of judicial sales, NKL's bid should be accepted. *See In re Gil-Bern Industries, Inc.*, 526 F.2d 627 (1st Cir. 1975). The Creditors' Committee has conceded that NKL's bid is a reasonable bid although it does not seem to offer as much cash to the estate.

Saco Leather could argue that because it was a latecomer to the bidding process it did not have an equal opportunity to prepare its bid. In response to this it should be observed that the President of Saco Leather

testified that he had previously looked into and considered purchasing Debtors' business and was somewhat familiar with it. He further testified that Saco Leather could prepare and file a bid by Wednesday, April 8, 1981 at 4:00 P.M., the time set by the Court for final, sealed bids.

It seems to this Court that a bidder at a judicial sale who makes a reasonable bid in accordance with a Court order should not be forced to bid again because of ambiguities or unresolved questions in the bid of opposing bidders.

An appropriate order has been entered.

---

2. This could be construed as reopening the bidding.