BOWNES, Circuit Judge.
This is an appeal from a judgment entered by the United States District Court for the District of Puerto Rico dismissing an appeal from an order of the United States Bankruptcy Court for the District of Puerto Rico. The Bankruptcy Court order had authorized the Special Master Juan Labadie-Eurite to negotiate the sale of two television stations, WKBM-TV (Channel 11) and WSUR-TV (Channel 9), owned by the debtor, American Colonial Broadcasting Corporation (ACBC), to the high bidder, Joaquin Villamil. This order was appealed to the district court by Charles Woods, the losing bidder. Separate appeals of this order were also filed by ACBC and the Committee of Equity Security Holders of ACBC. ACBC’s appeal was dismissed by the district court for failure to prosecute. The appeals of Woods and the Equity Security Holders were also dismissed by the district court on the grounds that the bankruptcy court order was not final and appealable as of right and that leave to appeal should not be granted because the order in question was moot. Woods, the Equity Security Holders, and ACBC appeal the district court’s decisions.
FACTS
In August of 1981, ACBC filed for protection under Chapter 11 and was designated a debtor-in-possession. By the spring of 1983, the slow progress of the Chapter 11 reorganization process led the creditors’ committee to petition the bankruptcy court for the appointment of a special master to *797 negotiate and conduct a sale of the debtor’s main assets, WKBM-TV and WSUR-TV. A special master was appointed and began receiving offers from potential buyers. On July 20, the special master filed a report with the bankruptcy court listing three offers: an offer from Villamil to purchase stock or television assets for $4.5 million; an offer from Woods to purchase the television assets for $10 million; and an offer from a third party which was subsequently withdrawn. Notice of a hearing was sent to all interested parties and a hearing was held on August 29. Each party discussed his offer. Woods explained that the $10 million offer consisted of $5 million in cash and $5 million payable over five years. Villamil’s offer included indemnification of a contingent claim by Television de Puerto Rico (TVPR) against ACBC over and above the $4.5 million cash offer. At the time the TVPR claim was valued at $37 million, but was subject to revaluation by the bankruptcy court.
Since both parties indicated at the hearing that they wished to amend and clarify their offers, the bankruptcy court gave the parties until 5:00 P.M. on August 31 to submit their final written offers as sealed bids. Both parties were also directed to include in the offers financial information and guarantees and the identity of the group making the offer.[1] The court then ordered that the offers be placed for public inspection with the clerk’s office on September 1 and stated that the court would issue its decision on September 2 naming which party could negotiate with the special master for the sale of the TV stations.
Both Woods and Villamil submitted bids by the 5:00 P.M. deadline. Woods had reduced his offer to $6 million while Villamil had increased his to $6 million. Since Villamil’s offer still included indemnification of the TVPR claim, subsequently estimated by the bankruptcy court to be worth $1.635 million, the Villamil offer was higher. On September 1, Woods learned that the Villamil offer was higher than his own. In the predawn hours of September 2, Woods sent telegrams to the special master and the bankruptcy court judge in which he attempted to reinstate his prior offer of $10 million for the purchase of the two TV stations. It does not appear that the judge received the telegram until after September 2. After learning about the $10 million offer, the debtor, ACBC, presented a letter to the judge’s secretary on the morning of September 2 indicating that the debtor preferred the $10 million offer, and also filed an informative motion to the same effect late that same afternoon.
On September 2, the bankruptcy court issued an order in which it “accepted [the Villamil offer] subject to the approval of the F.C.C.” and ordered the special master to “negotiate the sale of debtor’s assets to [Villamil] ..., and to prepare all documents necessary for F.C.C. approval of such transfer.” On September 3, Woods, concerned that the bankruptcy judge had not received the telegram sent on September 2, sent a letter to the judge by Express Mail with the same message. A similar letter was sent on September 5. Both the letters and the September 2 telegram were docketed on September 6. On September 8, Woods sent a letter to the judge raising his offer to purchase the two TV stations to $11 million and followed this up with a letter detailing his financial assets on September 9.
On September 12, the debtor, the Equity Security Holders, and Woods each filed motions for reconsideration of the September 2 order. The debtor’s motion drew attention to the fact that Villamil had not disclosed the identity of the principal parties as required by the August 29 order. The debtor suggested that Villamil’s offer might depend upon foreign investment and that this could result in denial of the license by the FCC due to alien-ownership restrictions. The motions of the debtor and the Equity Security Holders also pointed out what the parties considered to be unfavorable terms in the Villamil offer *798 compared to the new $11 million offer by Woods. William Bernton, who had been appointed as Special FCC Counsel to the debtor by the bankruptcy court also filed similar comments in favor of reconsideration. The motion filed by Woods also pointed out the possibility that the FCC might reject Villamirs license application and argued that, in any event, the $11 million offer was so much more beneficial to the debtors and creditors that reconsideration of the September 2 order was justified. Two motions opposing the motions for reconsideration were filed: one by Televisa, a creditor, and one by TVPR. Both supported the Villamil bid and stressed the need for expedited payment to creditors.
The motions for reconsideration were denied by the bankruptcy court on September 16. In its order, the court stated:
Pleadings and oral arguments in this case are plagued with references and allegations to the critical nature of the TV industry and a need for expediency in the ultimate determination of this matter. A prior purchase offer, during the pendency of this case, dissolved and failed to materialize due to an alleged lack of expediency. A final deadline was therefore, set. Therefore, any offers submitted after the expiration date of said final deadline cannot be entertained.
On September 19, Woods, the debtor, and the Equity Security Holders each filed separate notices of appeal of the September 2 order to the United States District Court for the District of Puerto Rico. At the same time, Woods filed a motion to stay the negotiations between the special master and Villamil during the pendency of the appeal. The motion for a stay was denied by the bankruptcy court on September 27. The denial of a stay was appealed to the district court which affirmed the bankruptcy court.
While the appeal of the September 2 order was pending before the district court, negotiations between Villamil and the special master took place. By December 5, 1983, the parties had agreed to a sale of the debtor’s assets by means of a merger of ACBC and Villamil’s corporation, Television Broadcasting Corporation (TBC). The objections of several interested parties, however, led the principals to scrap the merger agreement and substitute in its place a stock purchase and sale agreement. This alternative plan was first presented to the court during a hearing on January 23, 1984, which had originally been scheduled for consideration of the merger agreement. At this time the parties expressed their intention to sign a stock purchase and sale agreement within fourteen days. A hearing was set for February 10. At this second hearing, the debtor, the stockholders and Villamil signed and delivered to the court a stock purchase and sale agreement which the special master endorsed. Written and oral objections to the new agreement were made by Woods, the creditors’ committee, and independent creditors. During the hearing, the court advised the parties that several provisions of the agreement were unacceptable and granted them additional time to negotiate a compromise. An amended agreement was filed with the court on February 14, 1984, and was approved the next day. The parties were authorized to take all necessary steps toward closing the sale, including obtaining FCC consent to the transfer of the broadcasting license and confirmation by the creditors of the debtor’s reorganization plan. This February 15 order was subsequently appealed to the district court by Woods; this appeal is not before us.
On June 13, 1984, while the debtor and Villamil worked toward closing the sale, the district court ruled on the appeals of Woods and the Equity Security Holders of the September 2 order. Although the Equity Security Holders had filed a separate appeal, they had appeared in Woods’ appeal by both filing a statement of intent to join and fully support Woods’ position and then filing their own brief. The district court dismissed the appeal of Woods and the Equity Security Holders on two grounds. It held first that the September 2 order was not a final order and that it was, therefore, not appealable of right. Then, considering the notice of appeal as a mo *799 tion for leave to appeal an interlocutory order, the district court denied leave to appeal on the ground that the September 2 order to negotiate was mooted by the February 15 order confirming the sale. This judgment was appealed to this court by Woods, the debtor, and the Equity Security Holders.
During the pendency of this appeal, the principal parties have implemented all preclosing terms and conditions of the stock purchase and sale agreement, including the transfer to the debtor of $425,000 to maintain the condition of debtor’s assets and petitioning the FCC for approval of the license transfer. As of oral argument it still remained for the creditors to confirm the reorganization plan, for the FCC to approve the license transfer, and for the bankruptcy court to give its final approval to the reorganization plan. We have since learned, through an informative motion filed by Woods, that the FCC has denied approval of the license transfer, primarily on the grounds that the degree of alien ownership and control present in the Villamil group would violate federal law. In its letter explaining its decision, the FCC indicated that this decision could be contested by the applicants or the application could be amended and resubmitted.
JURISDICTION
We begin by noting that we have no jurisdiction over the appeal of the debt- or, ACBC. ACBC’s appeal of the September 2 bankruptcy order was dismissed by the district court for failure to prosecute. No notice of appeal was filed within the thirty-day period allowed for appeals. Fed. R.App.P. 4(a). The requirements of Rule 4(a) are “mandatory and jurisdictional,” USM Corp. v. GKN Fasteners, Ltd., 578 F.2d 21, 22 (1st Cir.1978), and ACBC’s failure to comply with these requirements leave this court without jurisdiction. Nor can we consider ACBC a proper party to appeal the district court’s denial of the Woods appeal since, unlike the Equity Security Holders, ACBC did not either file an appearance or join in that action.
What is before us is the appeal of Woods and the Equity Security Holders from the district court’s dismissal of the Woods appeal. The threshold issue in both appeals is whether we have jurisdiction to consider an appeal of the kind of order made by the bankruptcy court on September 2. Our consideration of this question is initially complicated by the fact that the appeal of Woods is governed by a different jurisdictional statute than the appeal of the Equity Security Holders. This is because the Woods appeal was filed one day before the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984 while the appeal of the Equity Security Holders was filed several days after the effective date of the Act.
The jurisdictional statute governing the Woods appeal limits our review of bankruptcy appeals from the district court to “final judgments], order[s], or decree[s]” of a district court.[2] The jurisdictional statute governing the appeal of the Equity Security Holders limits our review of bankruptcy appeals from the district courts to “all final decisions, judgments, orders, and decrees.” 28 U.S.C. § 158(d) (1984). The sole difference between the two provisions is the addition of the word “decisions” in § 158(d). Although this would appear to be a minor change, we must consider whether this addition in any way expands the jurisdiction of the court of appeals beyond the jurisdiction provided by § 1293(b). In particular, we must determine whether § 158(d) provides for jurisdiction over an appeal of an interlocutory order of the bankruptcy court to the district court.
A similar question was considered by the Ninth Circuit in the context of § 1293. In § 1293(a), the court of appeals was granted jurisdiction over appeals from “all final decisions” of bankruptcy appellate panels, while in § 1293(b), the court of appeals was granted jurisdiction over appeals of “final *800 judgments], order[s], or decree[s]” of appellate panels, district courts, and bankruptcy courts. In In re Rubin, 693 F.2d 73 (9th Cir.1982), the Ninth Circuit determined that court of appeals jurisdiction over “final decisions” under § 1293(a) did not create any court of appeals jurisdiction over appeals of bankruptcy court interlocutory orders to the appellate bankruptcy panels.[3] The court reasoned that if an appellate panel’s resolution of an appeal from an interlocutory order were to be considered a “final decision,” then § 1293(a) would condition the appealability of interlocutory orders upon the nature of the intermediate appellate forum, since jurisdiction over bankruptcy appeals from the district court was strictly limited to final orders. In re Tidewater Group, Inc., 734 F.2d 794, 796 (11th Cir.1984). This would place parties at a significant disadvantage if they were litigating in a circuit where appellate bankruptcy panels had not been set up.[4] Absent a clear indication from Congress that it intended the system of bankruptcy appeals to contain such incongruities, the Ninth Circuit held that “decisions” and “judgments” should be considered to be equivalent in § 1293. Accord Collier on Bankruptcy f 3.03[7][d][v] at 3-309 through 3-310 (15th ed. 1984); cf. In re UNR Industries, Inc., 725 F.2d 1111, 1115 (7th Cir.1984) (“decision” in 28 U.S.C. § 1291 means judgment, order, or decree).
Similarly, the addition of the word “decision” in 28 U.S.C. § 158(d) should not be taken to expand the bankruptcy jurisdiction of the courts of appeals. Those few courts that have compared § 1293(b) with § 158(d) have found only “immaterial wording changes.” In re Riggsby, 745 F.2d 1153, 1155 (7th Cir.1984). Accord Pacor, Inc. v. Higgins, 743 F.2d 984, 987 n. 4 (3d Cir.1984). A review of the legislative history of § 158(d) reveals that the sponsor of this language viewed it only as continuing “traditional appellate review.” 130 Cong. Rec. E 1108 (daily ed. March 20, 1984) (statement of Rep. Kastenmeier). Although a contrary interpretation of § 158(d) would not produce the kind of systemic incongruities discussed above,[5] the havoc which it would wreak upon both the courts of appeals and parties in bankruptcy [6] are sufficient reasons to presume that Congress intended to maintain the status quo as to court of appeals jurisdiction over interlocutory orders of the bankruptcy courts.
Under this analysis of 28 U.S.C. § 158(d), the scope of our bankruptcy appeals jurisdiction is the same for the appeal of the Equity Security Holders as it is for the appeal of Woods under § 1293(b). We have jurisdiction of these appeals only if the underlying bankruptcy order appealed from was itself final, In re Tidewater, 734 F.2d 794, 796 (11th Cir.1984); In re Comer, 716 F.2d 168, 172 (3d Cir.1983), or if it falls within the narrow exceptions to the requirement of finality, see infra. In this case, the district court determined that the *801 order in question, the September 2 order authorizing the special master to negotiate with Villamil, was interlocutory. Our review is limited to the district court’s determination that the September 2 order was interlocutory. That determination was a final judgment as to the nature of the September 2 order. If we determine that the September 2 order was in fact interlocutory, our review must stop. We may not consider, as has been suggested by the appellant, whether the district court abused its discretion in refusing to grant leave to appeal under 28 U.S.C. § 1334(b) (omitted 1984).[7] The district court’s denial of leave to appeal an interlocutory order is itself interlocutory since the effect of the denial is to leave matters in the bankruptcy court in the same unfinished state they were prior to the attempted appeal. In this sense, the district court’s denial of leave to appeal is no different from a grant of leave to appeal and our jurisdiction is similarly prohibited.
FINALITY
We now turn to determining whether the September 2 order authorizing the special master to negotiate with Villamil was “final.” Finality is viewed more flexibly in the bankruptcy context than it is in other civil litigation contexts. In re Comer, 716 F.2d 168, 171 (3d Cir.1983). A bankruptcy order need not dispose of all aspects of a case in order to be final; an order which disposes of a “discrete dispute within the larger case” will be considered final and appealable. In re Saco Local Development Corp., 711 F.2d 441, 444 (1st Cir.1983). The order in question must, however, “conclusively determine” the dispute. Id. at 445-46.
A final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree.
City of Louisa v. Levi, 140 F.2d 512, 514 (6th Cir.1944). An order which “does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits” is considered interlocutory. In re Merle’s, Inc., 481 F.2d 1016 (9th Cir.1973).
We agree with the district court’s ruling that the September 2 order was not final. The order in question did not confirm the sale of the TV stations, leaving nothing but the actual transfer of property to take place. It accepted the bid of Villamil and authorized the special master to negotiate a contract along the lines of the bid. It was clear to all parties that the negotiations which were to take place were not a simple matter. Given the number of parties and the amount of money involved, it was fairly obvious that Villamil’s four-page bid would have to be converted into a complex contractual agreement. Although a special master was appointed to “negotiate and conduct the sale,” the bankruptcy court retained jurisdiction over these negotiations and any resultant agreement. Furthermore, the ultimate power to allow the sale to go through remained with the bankruptcy court since it retained control of the debtor’s assets. The order in question was clearly only a preliminary step toward a sale.
In addition, the continuing vitality of the bankruptcy court’s choice of Villamil as a *802 purchaser was contingent upon a number of events. There was no assurance that negotiations would be successful. If they had broken down, the court undoubtedly would have had to reopen the bidding, thereby making the September 2 award moot. The precise nature of the sales agreement was also uncertain at the time of the September 2 order. Where parties are negotiating, there is always the possibility that positions will change. As it happened, the sale of assets originally contemplated by the court and the parties evolved into a stock purchase and sale agreement. As a result, the objections of the debtor and the Equity Security Holders to the Villamil award melted away.[8] Clearly an order is inconclusive where events which follow the order can move interested parties from a position of opposition to a position of support.[9] In such a case, allowing an appeal before the full significance of the order is manifested would be as a colossal waste of judicial resources. It could also hurt the parties, who cannot know at the time of the preliminary order whether the order will turn out to be more favorable than it first appears.
A third major contingency present in this situation is the approval by the FCC. Any approval by the bankruptcy court of the Villamil offer was made contingent upon FCC approval of the license transfer. As it happens, the FCC has denied approval, but it seems likely that this is not the end of this issue. The final result is highly uncertain. Villamil could prevail over the FCC or could amend the contract in such a way as to get approval. In such case, the concern of the parties about Villamil’s ability to get FCC approval will prove to be groundless. The other possibility is that Villamil will find it impossible to satisfy the FCC. This would probably lead the bankruptcy court to reopen the bidding. All that will have been lost is time and the effort of negotiation.
While we do not mean to belittle the practical significance of time to the creditors and the Equity Security Holders, we, nonetheless, cannot make this a factor in our determination of the propriety of appellate review.
“[M]any types of interlocutory rulings by a district court, if erroneous, may require the court of appeals to set at naught a lengthy trial, upon ultimate review of a final decision in the case. Such for example, might be an order denying a motion to dismiss an indictment or a complaint, or a ruling admitting or excluding evidence. Nevertheless, the policy against allowing piecemeal appellate review in such cases has been adhered to.”
In re Chappell & Co., 201 F.2d 343, 345 (1st Cir.1953). We understand appellant’s desire to “nip this in the bud.” Were we, however, to permit review under these circumstances, the courts of appeals would be overwhelmed with litigants seeking to second-guess trial courts and the unpredictable course of future events. Accord Maiorino v. Branford Savings Bank, 691 F.2d 89, 91 (2d Cir.1982). Furthermore, we note that appellants had an opportunity to *803 convince the district court to grant leave to appeal this interlocutory order. The presence of this safety valve in the bankruptcy statute, 28 U.S.C. § 1334(b), see supra note 7, should serve as adequate protection against the hardships which may be created by erroneous interlocutory bankruptcy court orders.
Even if the September 2 order was interlocutory in nature, it may fall within two well-established exceptions to the final judgment rule: the Cohen rule and the Forgay-Conrad rule. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). In order for an interlocutory order to be eligible for review as a collateral order under the Cohen rule,
[t]he order must involve: (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one which is “unfinished” or “inconclusive”; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court’s discretion.
United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir.1979). “These requisites may be summarized as separability, finality, urgency, and importance.” In re Continental Investment Corp., 637 F.2d 1, 5 (1st Cir.1980).
None of these criteria are met by the September 2 order. The issue of which bid should have been accepted by the bankruptcy court is not separable from the reorganization as a whole. It appears that the two TV stations are the debtor’s major asset. Coming up with a purchase plan which protects the diverse interests of the debtor, the creditors, the Equity Security Holders, and contingent claimants, and finding a purchaser who has the financial resources to make the plan work is undoubtedly a major part of the Chapter 11 reorganization. To consider the Woods appeal on the merits would essentially put the court of appeals into the shoes of the bankruptcy court as to the reorganization as a whole. We have already pointed out the inconclusiveness of the September 2 order. If any legitimate opposition to the purchase by Villamil still exists at the time the sale is finally confirmed, if it is, the opportunity to appeal from that order will sufficiently protect the interested parties. The hardships of delay and the possibility of having to retry a complex corporate reorganization proceeding cannot support a finding of urgency. In re Continental Investment Corp., 637 F.2d at 5-6. Finally, we note that what this appeal really involves is the discretionary decision of the bankruptcy court not to consider Woods’ late bid, which decision is not controlled by much in the way of any law, let alone “important and unsettled” law. The Cohen exception simply does not apply to this case.
Nor does the Forgay-Conrad exception apply. The factor crucial to the application of this exception is the presence of the possibility of irreparable injury to losing parties if appellate review is delayed until the litigation is over. 9 Moore’s Federal Practice, § 110.11, at 142 (2d ed. 1983). Usually this will involve a court order which, although interlocutory, orders the immediate disposition and delivery of property. No irreparable injury is present here. The September 2 order did not transfer the TV stations to Villamil; in fact, it did not even conclusively give him the right to purchase them.
We conclude, therefore, that this court has no jurisdiction over the district court’s dismissal of the appeal of the September 2 bankruptcy court order because both the order and the district court’s dismissal were interlocutory.

Dismissed.

Costs to be paid by appellant Woods.

. The identity of the parties behind the offers was of some concern since federal law limits alien ownership of broadcast stations. 47 U.S.C. § 310(b)(4) (1982).

. This language is found in 28 U.S.C. § 1293(b) (omitted 1984), as made effective by the transítion provisions of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, Title IV, § 405(c)(2), 92 Stat. 2685.

. The appellate bankruptcy panels were granted discretionary jurisdiction over interlocutory orders by 28 U.S.C. § 1482(b) (omitted 1984). Similar jurisdiction was granted to the district courts by 28 U.S.C. § 1334(b) (omitted 1984).

. The 1978 Bankruptcy Reform Act authorized the creation of appellate bankruptcy panels, but the creation of these panels was purely discretionary with each circuit council. 28 U.S.C. § 160(a) (implicitly) repealed by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. 98-353, Title I, § 104, 1984 U.S. Code Cong. & Ad.News (98 Stat.) 333, 341 (to be codified at 28 U.S.C. § 158).

. Section 158(d) uses the same language to describe the jurisdiction of the court of appeals over appeals from both the district court and the appellate bankruptcy panels. 28 U.S.C. § 158(d).

. In addition to. considerations of judicial economy, the reasons behind the rule limiting appellate review to final judgments include avoiding the "harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise,” Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940), as well as the "elimination of delays caused by interlocutory appeals.” Catlin v. United States, 324 U.S. 229, 234, 65 S.Ct. 631, 634, 89 L.Ed. 911 (1945). Especially in the bankruptcy context, where there are potentially two layers of appellate review by right, the extra costs of litigation, let alone delay, could seriously overburden the parties.

. Section 1334(b) stated: "The district courts for such districts have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.” There are no standards set out in the statute for the exercise of this discretionary power, which makes abuse of discretion review speculative at best. Were we to review such denials of leave to appeal, we would most likely turn to two well-established exceptions to the final judgment rule: the Cohen rule and the Forgay-Conrad rule. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Forgay v. Conrad, 47 U.S. (6 How.) 201, 203-06, 12 L.Ed. 404 (1848). Since we do this anyway as part of our consideration of whether the bankruptcy court order is "final,” see infra, review of a denial of leave to appeal under the abuse of discretion standard would be redundant.

. Prior to the substitution of the stock purchase and sale for the sale of assets, the debtor and the Equity Security Holders opposed the award to Villamil and appealed the order in the hopes of having an opportunity to negotiate with Woods. After the stock purchase and sale agreement replaced the sale of assets, both the debtor and the Equity Security Holders changed their tune. Their sole interest in continuing to appeal the September 2 order was to prevent the sale of assets authorized by it from being reinstated if the Villamil agreement fell through or was not approved by the FCC. Because we do not reach the merits of the Equity Security Holders’ appeal, we make no comment on this.

. It may well be that Woods’ opposition to the September 2 order will continue whether the Villamil offer is ultimately successful or not. We note, however, that it is unlikely that Woods has standing to oppose the order at all in his position as an unsuccessful and late bidder. Cf. In re Realty Foundation, Inc., 75 F.2d 286, 288 (2d Cir.1935) (low bidder has no standing to contest award); Munro Drydock, Inc. v. M/V Heron, 585 F.2d 13, 15 (1st Cir.1978) (creditor entitled to appeal for acceptance of an upset bid); In re Muscongus Bay Co., 597 F.2d 11, 12 (1st Cir.1979) (highest timely bidder permitted to appeal acceptance of late upset bid); In re GilBern Industries, Inc., 526 F.2d 627 (1st Cir.1975) (highest timely bidder permitted to appeal acceptance of late upset bid).