In re WINTEX, INC., also d/b/a
Jaytex Exporters and Jaytex
Fabrics, Debtor.

Civ. A. Nos. 91–11583–K,
85–00824–CJK.

United States District Court,
D. Massachusetts.

May 7, 1992.

notes of the Central Bank of Nigeria belonging to the debtor. At a hearing held May 2, 1991, the bankruptcy court conducted a sealed bid auction. Turan won that auction, making the high bid of $223,111.82 under protest. The purchase price exceeded the amount of Turan's initial offer by more than $29,000. Turan contends that the bankruptcy court was obligated to accept the initial offer that had been agreed to by the debtor and that holding an auction was therefore impermissible. I conclude that the bankruptcy court acted within its discretion and affirm.

## BACKGROUND

On February 27, 1991, the debtor, Wintex, Inc., and Turan entered into a written agreement for the purchase and sale of the five promissory notes. The purchase price agreed upon was $193,897.88. Under the agreement, Wintex was required to tender the notes to Turan's escrow agent by March 29, 1991. The parties agreed that time was of the essence because Turan planned to resell the notes to a third party. The agreement also provided that it was "subject to Bankruptcy Court approval."

Pursuant to section 363 of the Bankruptcy Code, 11 U.S.C. § 363, under which the sale was authorized, the debtor issued a "Notice of Intended Private Sale (Nigerian Promissory Notes)." The Notice described the five notes and stated that the notes would be sold to Turan for $193,897.88 "as is," unless an objection was made or a counteroffer on substantially the same terms as Turan's offer was received no later than 4:00 p.m. on March 21, 1991. The Notice stated that any counteroffer "must be at least ten percent (10%) higher than the original offer and must be accompanied by a deposit by certified or cashier's check in an amount equal to a minimum of ten percent (10%) of said counteroffer." The notice also stated:

7. In the event that any timely objections or counteroffers are filed, a hearing will be held before the Honorable Carol J. Kenner, United States Bankruptcy Judge ... at a time to be determined by the court, at which hearing all parties

Richard L. Levine, Ben T. Clements, Hill & Barlow, Boston, MA, for appellant.

Patrick P. Dinardo, Sullivan & Worcester, Boston, MA, for appellee.

## OPINION

KEETON, District Judge.

In this appeal from a decision of the Bankruptcy Court, Kenner, J., appellant Turan Corporation contends that the bankruptcy court erred as a matter of law in rejecting a negotiated sale to appellant of five twenty-year U.S. Dollar promissory

who have filed objections or counteroffers (or their representatives authorized to bid) are expected to be present. At that hearing, any counterofferor and the original offeror will be entitled to submit further bids for the purchase of the Property.

8. If no objections or counteroffers are filed with the Court and served upon Debtor's counsel on or prior to 4:00 p.m. on March 21, 1991, the sale to Turan Corporation will be consummated on the terms set forth in [the agreement between Turan and Wintex], or terms substantially similar, without further notice or a hearing.

Debtor's counsel requested a hearing, should one prove necessary, before Judge Kenner, and the court scheduled a hearing for March 28. On March 21, Markham International, Inc. submitted a timely bid in the amount of $201,653.79, accompanied by a deposit of $5000. Neither of those figures satisfied the minimum 10% requirements specified in the Notice of Intended Private Sale.

The court later moved the hearing to a date in April, beyond the time specified for tender of the notes, and the parties extended the date for tender to April 15. However, the bankruptcy court ultimately scheduled the hearing for May 2, denying the debtor's emergency motion to schedule a hearing before April 15. Turan then sent notice to Wintex that it would once again extend the deadline to a date beyond the scheduled hearing date. Wintex responded that Turan's "offer" to purchase the notes, which was subject to a condition now impossible to meet (tender by April 15 being precluded by the need for court approval, which could not take place before May 2), had lapsed.

### STANDARD OF REVIEW

The parties do not agree on how the bankruptcy court arrived at its decision to conduct a sealed bid. That dispute leads the parties to disagree on the standard of review to be applied in this case. Turan contends that the court, as a matter of law, concluded (erroneously) that Turan lacked

standing to object to the bidding process and argues that the court's decision is subject to plenary review. Wintex argues that the court (correctly) found as a fact that Turan's offer had lapsed and asserts that the court's finding is subject to review only for clear error.

At the hearing before the bankruptcy court, Turan's counsel stated its position that there was a binding agreement between Turan and the debtor. The court then asked whether as a "potentially disappointed bidder" Turan had standing to make that argument. In response, Turan's counsel stated that it had standing as a party to a contract. The court responded, "Okay. Are you willing to—thank you. Let me ask the trustee; would you be amenable to having the two interested parties, if they're interested still in making a final sealed bid?" The debtor's counsel replied that he was. The court made no determination that Turan lacked standing to object to the bidding process.

In response to the debtor's reply that it would like to have the benefit of a final bid, the court asked if Wintex wished to withdraw its argument that Turan's offer had lapsed. Although Wintex was not willing to withdraw that argument, which if accepted might have precluded Turan from participating in a bid since there would have been only one timely bid before the court (Markham's), Wintex wanted to go forward with a sealed bid. On that representation, the court proceeded to conduct a sealed bid between Turan and Markham. The court did not find that Turan's bid had lapsed.

Immediately before the court recessed to allow the bidders to formulate their bids, Turan's counsel stated, "If I may say that we're proceeding with this under protest. We believe we have a binding agreement with the debtor for the purchase of these notes." The court responded, "All right. I find that you don't." That is the sole expression of the court's decision. Although the court used the word "find," that usage is not conclusive as to issues before this court. I cannot determine from the transcript whether the bankruptcy court made

a finding on the basis of which it concluded that there was no contract or simply concluded as a matter of law that there was no contract. The basis for any such finding or conclusion is nowhere stated. Thus, were it necessary to review the stated basis of the bankruptcy court's decision, I might be forced to remand for a more complete explanation of that decision.

However, I need not resolve this dilemma. I assume in appellant's favor that there was a valid contract. I nevertheless conclude that the bankruptcy court did not abuse its discretion in allowing further sealed bids, the contract notwithstanding.

### REASONS FOR DECISION

Appellant contends that Wintex agreed to sell the notes to Turan for $193,897.88 subject not only to bankruptcy court approval but also to the terms of the Notice of Intended Private Sale. The Notice specified that counteroffers had to exceed Turan's offer by at least 10% and be accompanied by a deposit of at least 10%. Markham submitted a counteroffer less than 5% greater than that of Turan, accompanied by a deposit of less than 3%. Turan contends, therefore, that Markham's counteroffer is invalid. No other offers were made before the deadline. Thus, Turan contends that its offer—the only conforming offer before the bankruptcy court—could not have been rejected unless it was "manifestly inadequate." *See In re Muscongus Bay Co.,* 597 F.2d 11 (1st Cir.1979). Moreover, Turan contends that because only one valid offer was made, under the terms of the contract and the Notice of Intended Private Sale, no hearing was necessary. Wintex was obligated to tender the notes on May 15, 1991, the last day to which the date of tender had been extended. Finally, Turan contends that the bankruptcy court could not reject its offer in order to obtain a greater benefit for the bankrupt estate because to do so would "impair public confidence in the regularity of judicial sales." *In re Gil–Bern Indus., Inc.,* 526 F.2d 627, 628 (1st Cir.1975).

### A.

■ Turan errs in arguing that the terms of the contract precluded Wintex from accepting bids within 10% of the amount of Turan's own. The contract only provided that it was "subject to Bankruptcy Court approval." In order to fulfill its obligations under the Bankruptcy Code, the debtor issued the Notice of Intended Private Sale. However, the issuance and the terms of the Notice did not reduce the discretion of the bankruptcy court under the applicable law, nor did they impair any right of any interested party to request the bankruptcy court to exercise its discretion, in the interest of obtaining a fair price. In short, Wintex did not agree to make the terms of the Notice a part of its agreement with Turan, and those terms did not become part of the agreement by operation of law. Failing to adhere to the terms of the Notice did not constitute breach of the agreement.

■ Turan also contends that Wintex had a duty of good faith and fair dealing that obligated it to seek to obtain court approval of Turan's offer. According to Turan, Wintex was obligated to exercise its discretion to reject Markham's nonconforming counteroffer. However, Wintex also had an obligation to its creditors. This latter obligation is statutory. *See* 11 U.S.C. §§ 704, 1107 (duty to act in best interests of parties in interest). Any provision of the parties' contract to the contrary, whether express or implied, is subject to the primary command of the statute. Wintex had a duty to Turan only to the extent not inconsistent with its principal obligation to maximize value for its creditors. Of course, within limits, a debtor has some discretion. A debtor may avoid the increased cost and complexity associated with considering additional bids unless the additional bids are high enough to justify their pursuit. The 10% increase requirement is one example of a reasonable litmus test. In this case, Markham's bid, which turned out to be the only other bid submitted, was almost eight thousand dollars higher than Turan's, more than sufficient to justify Wintex's interest in the bid under

the circumstances. Even though it failed to satisfy the 10% requirement, it passed an alternate litmus test. There was no violation of a duty of good faith and fair dealing in pursuing that bid in accordance with Wintex's principal obligation.

### B.

Turan also fails to recognize the applicability of one of its own arguments. The parties disagree on the meaning and effect of Turan's attempt to extend the deadline for tendering the notes to May 15. Because resolution of that dispute is unnecessary to my disposition of the present appeal, I do not resolve it. However, I find relevant Turan's argument that waiver by a party of a contract provision inserted solely for the benefit of that party provides no basis for objection by the other party. In support of this proposition, Turan cites *De Freitas v. Cote*, 342 Mass. 474, 174 N.E.2d 371 (1961), *Stewart v. Griffith*, 217 U.S. 323, 30 S.Ct. 528, 54 L.Ed. 782 (1910) (Holmes, J.), and 5 Williston, *Contracts* § 664.

The contract provision calling for court approval was handwritten by Wintex on the typewritten contract sent to Wintex by Turan. That provision was designed to comply with Wintex's obligations under the bankruptcy code, though also, perhaps, to protect Turan from subsequent grievances by interested parties. The terms of the Notice of Intended Private Sale setting a floor on counteroffers and establishing a deposit requirement, however, may reasonably be interpreted as intended to benefit only Wintex. Although such requirements are an appropriate means of preventing the waste of time and resources by discouraging marginal bidding, any intention to protect Turan's expectancy by setting such requirements would have violated Wintex's obligation to maximize value. Wintex waived its own requirements after receiving only one additional bid that exceeded Turan's bid substantially (though not by more than 10%). That waiver provides no basis for objection by Turan.

### C.

Turan's contention that no hearing was necessary cannot be fully sustained. Wintex was obligated to seek court approval, even under the Notice of Intended Private Sale, so long as any counteroffer or objection was received. The Notice of Private Sale required a hearing to be held if *"any* timely objections or counteroffers are filed," and stated that no hearing would be held if *"no* objections or counteroffers are filed." Although the notice also said that any counteroffer must meet certain conditions, in a strict, literal sense, Markham's counteroffer did not become any less a counteroffer for failure to meet those conditions. Thus, a hearing was required under the literal terms of the contract and the Notice.

Moreover, even if Markham's "counteroffer" was not a counteroffer (because not in conformity with the Notice), I nevertheless conclude that it was appropriate to hold a hearing to consider Markham's "counteroffer." Markham's offer failed to comply, in part, because it was not accompanied by a 10% deposit. Yet, Turan's offer was not accompanied by a 10% deposit either. Thus, Markham's offer, if not a valid counteroffer, may be considered an objection to the terms of the bidding and the special treatment accorded Turan. The bankruptcy court had the authority upon hearing that objection to level the playing field. 11 U.S.C. § 105; *cf. In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir.1989) ("no doubt that the court had authority to issue" order providing for competitive bidding). It was within the bankruptcy court's discretion to establish a level playing field at the hearing by requiring new sealed bids.

### D.

Turan argues that its bid was not "manifestly inadequate" when made and therefore could not be disregarded by the bankruptcy court in the absence of a valid higher bid. *See In re Muscongus Bay Co.*, 597 F.2d 11 (1st Cir.1979).

In that case, the bankruptcy court refused to confirm a bid of $23,333 that was "both the only and the highest timely bid." Instead, it extended the bidding period upon receiving a late offer of $26,200. Ultimately the bankruptcy court confirmed the sale to the late bidder for $28,350, the highest bid received during the extension. The First Circuit affirmed the bankruptcy court's actions. In that case, the late bid exceeded the initial bid by more than 10% and was therefore "within the range of what traditionally has been considered a possible 'upset' bid." *Id.* at 12 (citing 4B *Collier on Bankruptcy* ¶ 70.98[17], at 1191 (14th ed. 1978)). However, it is not necessary that an "upset bid" occur before the bankruptcy court may entertain new bids.

The First Circuit also considered it relevant that the final bid exceeded the initial bid by 21.5%. In the present case, the final bid exceeded the initial bid by 15%. I "cannot say the bankruptcy court abused its discretion in concluding that a substantially better price probably would be obtained by a resale." *Id.*

### E.

I turn, finally, to the linchpin of Turan's appeal. Turan relies upon *In re Gil–Bern Indus., Inc.,* 526 F.2d 627 (1st Cir.1975) for the proposition that "it is important that the bidder receive what he had reason to expect, and that nothing impair public confidence in the regularity of judicial sales." In that case, the First Circuit stated that "it is an abuse of discretion for a bankruptcy court to refuse to confirm an adequate bid received in a properly and fairly conducted sale merely because a slightly higher offer has been received after the bidding closed." *Id.* at 629 (citations omitted). I conclude for the reasons that follow that this rule extracted from *Gil–Bern* does not control here.

1. In *Gil–Bern,* the bankruptcy court issued a notice of sale of certain property stating that " '[o]bjections, if any, to confirmation of the proposed sale ... and all counter-offers for the purchase of [said] property shall be made in writing and filed on or before 11:00 A.M. May 29.... Ob-jections and counter-offers, if any are filed, will be heard at 2:00 P.M. on May 29.' " *Id.* at 628. The appellant submitted the highest timely bid. At the hearing, another party that had bid lower before 11:00 was permitted to make an additional bid. Appellant, too, submitted a new bid, and sale was confirmed to the appellant. Appellant contended that it was entitled to have restored to it the difference between its final and initial bids. The First Circuit concluded that the prima facie meaning of the notice was that all bidding was to close at 11:00. Thus, the later higher bid was not to be considered.

In the present case, Markham submitted a *timely* higher bid. Although the bid did not conform to the terms of the Notice of Intended Private Sale, I do not consider Markham's failure in this regard to be equivalent to a failure to submit a bid at all (within the time frame permitted).

The court in *Gil–Bern* was concerned with the "regularity" of judicial proceedings. The ideal of fidelity to law requires the bankruptcy court to conform to rules that lead to consistency of judgment and predictability of result. However, in *Gil–Bern,* the court remanded for the district court to find whether it was a regular practice of the bankruptcy court to receive further offers at confirmation hearings. In fact, on remand, the district court did so find, and the bankruptcy court was affirmed. Thus, the hallmark of *Gil–Bern* is not rigid conformity to sales notices, but fealty to bidders' expectations. A high bidder expects to win the bid under ordinary circumstances; moreover, a high bidder expects not to be displaced as such after the bidding has come to a close (unless there is a regular practice of allowing additional bidding at hearing).

In this case, Turan was not the high bidder at the close of bidding. Turan had notice that Wintex was willing to accept Markham's higher bid and it understood that resolution of the parties' dispute remained for the bankruptcy judge to decide at hearing. The parties' contract required bankruptcy court approval. Turan's expectation of winning the bid did not preclude

the bankruptcy court from accepting additional bids because the sales contract (the only source from which Turan's expectancy might derive) specifically contemplated the court's exercise of such discretion. (Turan's bid was "subject to Bankruptcy Court approval.") Accordingly, the *Gil–Bern* rule upon which Turan relies is not impaired by not being applied in this case.

Markham's bid was the highest timely bid when the parties came before the bankruptcy court to resolve their dispute. This is not a case like *Gil–Bern* in which the bankruptcy court ignored the highest timely bid to the detriment of that bidder. "In addition, the bankruptcy court did not merely accept [Markham's high] bid and foreclose [Turan] from obtaining the property, a procedure which, had it occurred, [one] would have questioned. Rather the court afforded a period during which higher bids could be filed. [Turan] thus had an opportunity to prevail in the end...." *Muscongus*, 597 F.2d at 12–13. In fact, Turan did prevail.

2. In the Procedural Order scheduling oral argument in this appeal, I asked the parties "to be prepared to discuss the distinction, if any, between 'judicial sales' and 'private sales,' and any bearing that such a distinction might have on the proper outcome of the present appeal." At oral argument, Turan cited cases that it thought illumined the meaning of those terms and suggested that there was no relevant distinction. "Private sale," it was said, was used in contradistinction to "public auction." Wintex noted that the notice of sale had been issued by the court in *Gil–Bern*, whereas the debtor issued the notice in this case, but then suggested that the distinction made little difference.

I am not so certain as the parties that the distinction is without significance. It is one thing to suggest that a court is bound by the terms of its own notice, absent justification for departing; it may be quite another to suggest that a court is bound by the terms of an agreement of the parties (or, as here, a unilateral declaration by the debtor).

I discuss briefly two other cases cited by Turan, but I do not determine whether such cases ought to be distinguished because I conclude that, even if the debtor's notice was notice of a "judicial sale," the bankruptcy court did not act improperly.

In *In re Table Talk, Inc.*, 53 B.R. 937 (Bkrtcy.D.Mass.1985), the trustee of the debtor entered into an agreement to sell assets to a bidder and granted the bidder a right of first refusal. The trustee (not the court) gave notice of the proposed sale. After a higher bid was made, the original bidder exercised its right of first refusal and matched the competing bid. The court approved the subsequent matching bid. The trustee suffered a change of philosophy and asked the bankruptcy court to conduct another bidding procedure without a right of first refusal. The court declined, citing *Gil–Bern* and the need to maintain the integrity of judicial processes. However, in that case, the bankruptcy court had already approved a winning bid, creating reliance interests. *See* 11 U.S.C. § 363(m).

In the present case, the bankruptcy court approved only Turan's second bid. The debtor's private sale may have been converted to a judicial sale only once the bankruptcy court got involved. *See In re Winston Inn & Restaurant Corp.*, 120 B.R. 631 (E.D.N.Y.1990) (bankruptcy court plays active and important role in judicial sales). In *Winston*, the district court held that an order of the bankruptcy court regarding a sale established firm obligations incumbent on the parties. Turan argues the converse, that a sales agreement between the parties binds the court.

Whether or not the Notice of Intended Private Sale established the framework for a "judicial sale," I conclude that the bankruptcy court was not bound by the terms of the Notice. Although the court in *Table Talk* refused to entertain further bids, it did not conclude that it lacked the authority to entertain further bids. Rather, the court assigned two reasons for its decision.

First, the court was concerned about potential bidders who refrained from the initial round of bidding because of the right of first refusal. There was no way to

provide notice to them to allow them to participate in the proposed new bidding contest. Although Judge Kenner could have taken a similar concern into account in deciding whether to consider Markham's nonconforming bid, she was not required to do so. Because Turan had notice, it has no standing to raise this argument.

Second, the court found that to allow another bidding procedure would be inequitable to the winning bidder, "an entity that had bid the property in good faith." *Id.* at 943 (footnote omitted). On the facts of this case, it is possible to find an inequitable result. The parties' contract provided that time was of the essence because Turan intended to resell the promissory notes. At oral argument, Turan's counsel did not know whether the notes had been resold, but presumed that they were. In the interim between Turan's initial and final bids, the value of the notes increased. Thus, Turan argues, allowing the bankruptcy court to require additional bids places the burden of a falling market on Turan but accords the benefit of a rising market to the debtor. That inequitable disparity may impair the confidence of the public in the regularity of judicial proceedings.

However, in the circumstances of this case, it is at least equally plausible to find that no inequity resulted. There is no evidence that Turan contracted to sell the promissory notes to a third party, let alone at a price lower than the price Turan ultimately paid. Indeed, it may be inferred from the fact that Turan twice significantly extended the time for tendering the notes that Turan did not reach such an agreement. Furthermore, Turan could have protected itself by agreeing to sell the notes subject to a condition that it first obtain the notes at a price no greater than the resale price. The bankruptcy court did not find that to entertain further bids would be inequitable. In fact, to the extent that the record provides any guidance, it implicitly suggests that Judge Kenner found or assumed the opposite. Due to the difficulty in obtaining a hearing, Turan in any event would have borne the brunt of a shifting market if a conforming higher bid had been made or an objection filed. If a higher conforming bid had been received, the bankruptcy court surely would have acted reasonably had it conducted a final sealed bid.

Judge Kenner was faced with the difficult task of weighing the need for "confidence in the regularity of judicial sales," *Gil–Bern, supra,* along with the best interests of this particular estate and its creditors. "The bankruptcy court must be accorded discretion to decide the truly close cases as best it can in view of these competing considerations." *Muscongus,* 597 F.2d at 13.

The judgment of the bankruptcy court is affirmed. A final order in accordance herewith will be entered forthwith.