In re G.S.F. CORPORATION, Debtor,

Chase Commercial
Corporation, Appellant.

No. 90–2188.

United States Court of Appeals,
First Circuit.

Heard April 1, 1991.

Decided July 23, 1991.

William E. Ryckman, Jr., with whom Barry Y. Weiner, Lori A. Cianciulli and Shapiro, Israel & Weiner, P.C., were on brief, Boston, Mass., for appellant.

Paul G. Boylan, Boston, Mass., with whom Michael L. Alfano, Portsmouth, N.H., and Cuddy, Lynch, Manzi & Bixby, were on brief, Boston, Mass., for appellee 44 Lowell Junction Road Realty, Inc.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

Chase Commercial Corporation ("Chase") appeals a district court order vacating an injunction issued by the bankruptcy court. The bankruptcy court had enjoined 44 Lowell Junction Road Realty, Inc. ("Lowell") from proceeding against Chase in Massachusetts state court. We vacate the district court order.

## I. BACKGROUND

The complex posture of this case requires a detailed look at the events leading to this point. Lowell was the landlord, and Chase a secured creditor, of G.S.F. Corporation ("G.S.F.") as of September 5, 1984, when an involuntary bankruptcy petition was filed against G.S.F. Lowell sought relief from the automatic stay in bankruptcy in order to continue to collect rent on the property; Chase sought to protect its security interest in the collateral. Chase, Lowell, G.S.F. and the trustee in bankruptcy executed an agreement on December 18, 1984 ("December 18 Agreement"), which was entered as an order of the bankruptcy court. Under the December 18 Agreement, Chase was to take possession of the former G.S.F. premises, use its best efforts to conduct an auction sale of the collateral located at the property, and restore the property upon completion of the auction. Chase would compensate Lowell for its temporary use and occupancy of the property, in an amount to be determined by the bankruptcy court. Both Lowell and Chase agreed not to file "a claim for administrative expenses in this case."[1]

Chase conducted the auction and then quit the premises at the end of January 1985. On January 16, 1985, Lowell filed with the bankruptcy court a "Motion to Determine Use and Occupancy Payments by Secured Creditor in Possession." Two weeks later Lowell moved to withdraw the motion. Chase opposed the motion for withdrawal.

At a May 1, 1985, hearing on the motion for withdrawal, counsel for Lowell explained that after filing the original motion, Lowell learned that Chase had left the premises in a less-than-pristine condition; hence, determining use and occupancy payments was only one of many issues between the parties. As to these new matters, Lowell expressed its doubt that the bankruptcy court—acting under the newly revised Bankruptcy Code—had jurisdiction. Lowell specifically noted the presence on the property of hazardous waste requiring cleanup at Lowell's expense. According to Lowell, in the process of conducting the auction Chase opened up several drums containing hazardous waste, and some of that waste spilled out onto the ground. Lowell also stated that the Massachusetts Department of Environmental Quality Engineering had issued cleanup orders to Lowell.

Although the bankruptcy court did not make an express ruling on the issue, it appears from the hearing transcript that the court decided that it had jurisdiction for two reasons. First, the court found that the December 18 Agreement imposed certain duties that Lowell was now trying to avoid. The Agreement also imposed a duty on the court to determine use and occupancy payments. Thus jurisdiction could be premised on the court's obligation to follow through performance of the Agreement. Second, the court noted that the claims might affect administration of the estate. Chase asserted that any environmental damage to the property was attributable to the debtor, G.S.F., not Chase, and that Chase would pursue indemnification from G.S.F. Thus there was potential liability on the part of G.S.F. The following day

---

1. We have discussed the December 18 Agreement as though Chase were a party to it. Oddly, however, the Agreement was actually executed by counsel for Chase on behalf of Chase's parent corporation, Chase Manhattan Bank (Chase Manhattan). Moreover, while the introduction to the Agreement refers only to Chase Commercial, the substantive portion defines "Chase" to mean Chase Manhattan, and erroneously describes Chase Manhattan as a secured creditor of G.S.F. Despite this discrepancy (which Chase attributes to a clerical error), Chase concedes that it too is bound by the Agreement, including the waiver of administrative expenses, and we shall so treat it.

the court denied Lowell's motion to withdraw its motion.

At the pretrial hearing, May 29, 1985, the bankruptcy court explained that the purpose of the trial was to carry out the court's obligation under the December 18 Agreement to determine appropriate use and occupancy payments due Lowell. Counsel for Lowell asked:

And would the court entertain questions of hazardous—leaving hazardous waste on the premises, the removal of the landlord's fixtures, damage to the landlord's property and the trespass in terms of the secured party's abandonment of goods on the premises is part of the restoration provision of paragraph seven of the [December 18 Agreement].

The court replied:

If that fits within "restore the premises," then yes; otherwise, no. All that is involved in the [December 18 Agreement] is the reasonable use and occupation and the restoring of the premises, period. Anything that doesn't fit within those terms is not within the Agreement and is not part of this court's concern.

The bankruptcy court at first reacted negatively when Lowell's counsel proposed that it consider environmental damage when calculating use and occupancy payments; the court suggested that Lowell was trying to stretch the December 18 Agreement to encompass matters the parties had never considered. Later, however, the court concluded that "any acts that [Chase] performed in a manner as to cause damage" were within the subject area of the December 18 Agreement. The hearing concluded with the parties agreeing to a discovery timetable, but without an explicit ruling from the bankruptcy court as to the extent of its jurisdiction. Trial was set for September 10, 1985.

On June 21, 1985, Lowell filed a "Second Amended Motion to Determine Use and Occupancy Payments by Secured Creditor in Possession." Paragraph 20 of the Second Amended Motion stated a claim for damages allegedly stemming from the improper removal of collateral from the property. The motion also contained a paragraph, not present in the original motion, referring to the alleged environmental damage:

21. As a result of Chase's acts and omissions, the premises suffered a release or threat of release of hazardous material, as defined in M.G.L. c. 21E, § 5, injuring the premises, necessitating Lowell Junction's containment and removal of hazardous materials from the premises, and depriving Lowell Junction of the use of the premises for a period of approximately five months.

The relief sought by the Second Amended Motion included not only rental payments but also money damages for "the damage suffered as a result of Chase's acts and omissions." In its answer to the motion Chase denied the allegations of paragraphs 20 and 21 and set forth a cross-complaint against G.S.F., seeking indemnification in the event damages were assessed for the release of hazardous materials on the premises.

The bankruptcy court held a final hearing on the matter on August 22, 1985. The hearing concerned the failure of Lowell's president, R. Christian Haufler, to show up at a scheduled deposition. The parties also discussed the scope of the dispute before the bankruptcy court. The court stated that the issues before it were:

(1) what is reasonable use and occupation ... and (2) what, if any, damage has either Chase's occupancy or the auction sale caused, because Chase has the obligation to restore the premises to the condition [they] were in when it went into possession, not what they were when G.S.F. went into possession, but when Chase went into possession.

In elaboration, the bankruptcy court made it clear that it would consider any damage, from hazardous waste or otherwise, that Chase had inflicted upon the property during its occupancy. Any pre-existing damage would not be considered.

The dispute never went to trial. On September 5, 1985, the parties signed mutual releases ("September 5 Releases") and a stipulation of dismissal ("September 5 Stipulation"), whereby Chase agreed to pay

Lowell $100,000 in settlement of the dispute. The September 5 Stipulation stated that the parties had settled "all the issues" raised by Lowell in its Second Amended Motion, and "all issues" in the December 18 Agreement. Further, the Stipulation stated that the parties agreed "to release each other from any and all claims that each may have against the other ... and more particularly, in connection with the matters raised in these proceedings." The September 5 Release executed by Lowell released Chase from all claims:

of any nature whatsoever ... related, directly or indirectly, to any and all transactions, dealings, occurrences, acts or omissions on or before the date hereof ... including, but not limited to, any and all events or matters that have been, were, or could have been raised in connection with Lowell Junction's Second Motion to Determine Use and Occupancy Payments by Secured Creditor in Possession.

R. Christian Haufler executed Lowell's September 5 Release. Mr. Haufler, an attorney, added a handwritten exclusion to the release, as follows:

Specifically excluded from this release are any claims of whatever nature Lowell Junction has against GSF Corp. and GSF Realty Inc. there [sic] officers, directors, employees, shareholders and agents, and the trustee in bankruptcy In Re: GSF Corp., United States Bank. Corp. [sic], Dis. of Ma.

The September 5 Stipulation was incorporated by reference in an order of the bankruptcy court, also dated September 5, dismissing the case. No judgment was entered by the district court.

Predictably, the matter did not end there. More than two years later, Lowell filed an action in Massachusetts state court naming Chase and Chase Manhattan among the defendants. The complaint alleged that Chase improperly removed permanent fixtures from Lowell's buildings, causing damage, and wrongfully allowed barrels of

toxic chemicals to remain on the property. These barrels, according to the complaint, eventually ruptured, causing the contents to leak into the ground. Lowell sought damages for conversion, negligence, nuisance, and violations of Mass.Gen.L. ch. 21E, the Massachusetts hazardous waste statute. Subsequently, Lowell amended the complaint to add allegations that the September 5 Releases and the bankruptcy court order of the same date were procured by fraud.[2]

Chase moved for summary judgment in the state court on the ground that the environmental claims were identical to those raised by Lowell in the bankruptcy court, and thus were barred by res judicata. The summary judgment motion was denied without prejudice to renew after completion of discovery, as were Chase's motions for reconsideration and for interlocutory appeal.

Chase next sought redress in the bankruptcy court by moving that court to enforce its order and judgment entered on September 5, 1985. The bankruptcy court granted the motion on July 27, 1989, and issued an order enjoining Lowell from "commencing, pursuing, maintaining, or otherwise furthering" claims against Chase arising out of Chase's occupancy of the G.S.F. premises. In a memorandum, the court characterized Lowell's state court action as "a blatant attempt to either collaterally attack a court order, which it would be hard-pressed to appeal since the order is based on a stipulation [Lowell] signed, or an attempt to litigate the matter merely because it is not satisfied with the settlement." The bankruptcy court also based its decision to issue the injunction on the potential effect the litigation would have on the G.S.F. estate in the event that Lowell should prevail against Chase. At the least, the court noted, allowing the action to proceed would result in delaying the close of the bankruptcy case and distribution of the estate. The bankruptcy court declined to enjoin Lowell from proceeding against

---

2. We shall refer to the allegations in the Massachusetts complaint as the "environmental claims," although we note that the complaint alleges damage from other conduct and sources as well.

Chase Manhattan, however, reasoning that because Chase Manhattan had not been a party to the September 5 Stipulation and Releases, the court lacked jurisdiction over any dispute between Lowell and Chase Manhattan.

Lowell appealed the injunction to the district court. The district court characterized the bankruptcy court order as interlocutory, but gave leave for the appeal pursuant to 28 U.S.C. § 158(a). On October 29, 1990, the district court vacated the injunction on the ground that it exceeded the power of the bankruptcy court. Only where state court proceedings presented a clear danger of direct harm to the debtor, the court reasoned, could an injunction from the bankruptcy court issue, and that standard was not met in this case. Chase appealed the district court order to this court, basing jurisdiction on 28 U.S.C. § 158(d).

## II. DISCUSSION

Having recited the facts chronologically, we proceed to discuss the issues in the reverse order. The case presents the following questions: (1) whether this court has jurisdiction over the appeal; (2) what is the appropriate standard of review, and to which lower court order is that standard applied; (3) whether the bankruptcy court had power, in 1989, to issue an injunction against Lowell; and (4) whether the Anti–Injunction Act may present a bar to the injunction.

### Court of Appeals Jurisdiction

Title 28 U.S.C. § 158(d) grants the courts of appeals "jurisdiction of appeals from all final decisions, orders and decrees entered under subsections (a) and (b) of this section." Subsection (a) in turn confers jurisdiction on the district court over appeals from bankruptcy court orders. Section 158 limits our jurisdiction to appeals from final orders of the district court, but allows the district court to hear appeals from both final and interlocutory bankruptcy court orders.

The circuit courts have applied two tests to determine the finality of a district court order in a bankruptcy appeal. *See Matter of Commercial Contractors, Inc.*, 771 F.2d 1373, 1374–75 (10th Cir.1985) (outlining the split in the circuits). We define finality with reference to further proceedings:

> [W]hen a district court remands a matter to the bankruptcy court for significant further proceedings, there is no final order for purposes of § 158(d) and the court of appeals lacks jurisdiction. When a remand leaves only ministerial proceedings, for example, computation of amounts according to established formulae, then the remand may be considered final.

*In re Gould & Eberhardt Gear Machinery Corp.*, 852 F.2d 26, 29 (1st Cir.1988); *see also In re Abdallah*, 778 F.2d 75, 76 (1st Cir.1985), *cert. denied sub nom. Drury v. Abdallah*, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 657 (1986).

The further bankruptcy proceedings in this case are neither significant nor ministerial, because the district court did not remand to the bankruptcy court. As the case stands following the district court order, there will be no further proceedings in the federal courts. There will be significant further proceedings, but they will take place in the state courts of Massachusetts. Yet it is the termination of federal court involvement that seems most crucial for determining finality. We find, therefore, that the existence of further proceedings in the state court does not necessarily mean that, for federal court purposes, the district court order was nonfinal.[3]

---

**3.** Somewhat similar to this situation is a district court order remanding an "improvidently removed" case to the state court. Under 28 U.S.C. § 1447(d), there is no appeal of such a remand order (although there are judicially created exceptions to that bar; *see Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976) (where remand was not pursuant to statutory grounds); *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 993 n. 2 (8th Cir.1986) (where remand was appealable as a collateral order)). Here there is no statutory prohibition on review, yet it is arguable that the same policy considerations—avoidance of piecemeal litigation and delay, *see* 14A Wright, Miller & Cooper, *Federal*

We turn to examine the nature of the district court's action, lifting an injunction against state court litigation, and conclude that it qualifies as final.[4] Two of our cases support this conclusion. In *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553 (1st Cir.1986), we held that a district court order lifting the automatic stay in bankruptcy was an appealable final order. *Id.* at 557. Both reasons supporting that holding apply equally here. First, as in *Tringali*, the district court here took jurisdiction over only one aspect of the case, and for only one purpose: to determine if the injunction was appropriate. Having lifted the injunction, "nothing remains to be done in respect to that aspect—the single matter before the court. The decision as to the only matter before the district court is final and complete." *Id.* at 557–58. Second, because bankruptcy cases typically involve numerous controversies bearing only a slight relationship to each other, "finality" is given a flexible interpretation in bankruptcy. *Id.* at 558. Therefore, in bankruptcy, "an order which disposes of a discrete dispute within a larger case will be considered final and appealable." *Id.* (quoting *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 801 (1st Cir. 1985) (inner quotations omitted)). We believe the similarities between lifting an automatic stay and vacating an injunction justify a similar result. *See In re Chateaugay Corp.*, 880 F.2d 1509, 1512 (2d Cir. 1989) (describing the automatic stay as equivalent to a permanent injunction).

Similarly, in *De Cosme v. Sea Containers, Ltd.*, 874 F.2d 66 (1st Cir.1989), we heard an appeal from a district court's refusal to grant an injunction against state court proceedings. In that case, as here, the need for the injunction was premised on an earlier settlement in the federal court, although *De Cosme* did not involve a bankruptcy. The *De Cosme* opinion does not discuss the issue of jurisdiction in the court of appeals, but it reaches the merits of the dispute on the apparent assumption that further proceedings in state court do not render the district court's action nonfinal. *See id.* at 68.

■ Finding the district court order final, however, does not necessarily end our inquiry, because this court has held, in a different context, that we have jurisdiction "only if the underlying bankruptcy order appealed from was itself final." *American Colonial Broadcasting*, 758 F.2d at 800. In that case, the appeal was from the district court's decision not to take jurisdiction over an interlocutory bankruptcy appeal. *See* 28 U.S.C. § 158(a). The district court's action was indisputably nonfinal. Thus, this court had merely to determine whether the bankruptcy order was in fact interlocutory (in which case whether to take jurisdiction rested entirely within the discretion of the district court) or final (in which case the district court would be required to take the appeal). The special circumstances in *American Colonial Broadcasting* do not, we think, require a general rule that both lower court orders be final before the court of appeals has jurisdiction, although other circuits have adopted such a rule. *See In re Looney*, 823 F.2d 788, 791 n. 3 (4th Cir.), *cert. denied sub nom. Looney v. Grundy Nat'l Bank*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

In any event, we need not resolve that question today, as we find that the bankruptcy court order was final, despite the district court's characterization of that order as interlocutory. Plainly, we are not

---

*Practice and Procedure* § 3740 (2d ed. 1985)—should govern our decision. Nevertheless we conclude that the usual principles of finality, interpreted "flexibly" as they are in the bankruptcy context, *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 801 (1st Cir.1985), offer sufficient protection from these harms.

4. We acknowledge that 28 U.S.C. § 1292 provides for appeal from interlocutory orders of the district court, including the grant and vacation of injunctions. The Fourth Circuit, in *Capi-*

*tol Credit Plan of Tennessee, Inc. v. Shaffer*, 912 F.2d 749, 752–54 (4th Cir.1990), has sketched the three possible approaches to reconciling § 158(d)'s requirement of finality with § 1292. We agree with that court that the most sensible approach is to view § 1292 as only available when the case originated in the district court as opposed to the bankruptcy court; § 158(d) thus represents the exclusive source of circuit court jurisdiction over a case originating in the bankruptcy court.

bound by the district court's determination on this issue. *See In re Chateaugay Corp.*, 876 F.2d 8, 9 (2d Cir.1989); *American Colonial Broadcasting*, 758 F.2d at 801. Moreover, although the two orders, the one granting and the other vacating an injunction, are in a sense each other's reverse, they are final for precisely the same reason: Both ended the dispute and terminated the proceedings as far as the federal court system is concerned. Although the G.S.F. estate has not yet been settled, the controversy between Lowell and Chase is a "discrete dispute within a larger case," *Tringali*, 796 F.2d at 558, so that an order disposing of it is final in the bankruptcy context. We therefore conclude that we have jurisdiction over this appeal.[5]

### Standard of Review

■ Bankruptcy Rule 8013 provides that the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The rule is directed at review in the district court; however, the circuit courts that have considered the issue have uniformly held that in appeals from the decision of a district court on appeal from the bankruptcy court, the court of appeals independently reviews the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and de novo review to conclusions of law. *See, e.g., In re Fussell*, 928 F.2d 712, 715 (5th Cir.1991); *Matter of Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989); *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 243 (9th Cir.1988); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988); *In re Arkansas Communities, Inc.*, 827 F.2d 1219, 1221 (8th Cir.1987); *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir. 1987); *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985).

This court is "in as good a position to review the bankruptcy court's decision as is the district court." *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 814 (9th Cir. 1985). For that reason we adopt the standard of review embraced by the other circuit courts. Thus, it is the bankruptcy court's findings of fact that receive clearly erroneous review, not the contrary findings of the district court. A finding of fact is clearly erroneous when, after reviewing the evidence, the appeals court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

### Power of the Bankruptcy Court in 1989

■ As authority for the injunction, the bankruptcy court relied upon its power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a). This grant of equitable power is not unlimited. "While 11 U.S.C. § 105(a) does grant the bankruptcy court broad powers to issue any order 'necessary or appropriate to carry out the provisions of this title,' it is an extraordinary exercise of discretion to use that power to stay a third party action not involving the debtor." *In re Brentano's, Inc.*, 36 B.R. 90, 92 (S.D.N. Y.1984). In the ordinary case involving an injunction against a third party action, there must be some effect on the debtor's estate stemming from the action before there is bankruptcy court jurisdiction to enjoin it. *See Matter of Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir.1989) (§ 105(a) confers "authority to enjoin actions which threaten the integrity of the bankrupt's estate"); *In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir.) (third party actions may be enjoined where they "would affect the bankruptcy reorganization in one way or another such as by way of indemnity or contribution"), *cert. denied sub nom.*

---

5. Because we have concluded that the orders below were final, we need not decide their appealability under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *In*

*re Looney*, 823 F.2d 788, 791 (4th Cir.), *cert. denied sub nom. Looney v. Grundy Nat'l Bank*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

*Menard–Sanford v. A.H. Robins Co.,* ——
U.S. ——, 110 S.Ct. 376, 107 L.Ed.2d 362
(1989); *In re Brentano's, Inc.,* 36 B.R. at
92 (stay must be "necessary to an orderly
disposition of the debtor's estate").

■ This case is somewhat extraordinary, however, as what is sought is a relitigation injunction. The justification for the injunction here is not effect on the debtor (although the presence of such an effect certainly strengthens the case for the injunction), but protection of a federal judgment. *See Toucey v. New York Life Ins. Co.,* 314 U.S. 118, 144, 62 S.Ct. 139, 149, 86 L.Ed. 100 (1941) (Reed, J., dissenting); 17 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4226 (2d ed. 1988). A valid original judgment provides the federal court with the power to issue the relitigation injunction. 17 Wright, Miller & Cooper § 4226.[6] Thus, in 1989, the bankruptcy court had only to determine whether its 1985 judgment was valid. If the bankruptcy court lacked jurisdiction over the environmental claims in 1985, then that portion of the order encompassing those claims cannot serve as the predicate for a relitigation injunction.

The Bankruptcy Act, as amended, sets forth two types of cases as to which a bankruptcy court may take jurisdiction if properly referred by the district court: core proceedings and related proceedings. 28 U.S.C. § 157; *see generally* 17 Wright, Miller & Cooper § 4106. Core proceedings involve rights created by the Bankruptcy Act; they depend on the Bankruptcy Act for their existence. 28 U.S.C. § 157(b)(2); *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990). Related proceedings do not arise under the Bankruptcy Act; they must, however, "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989); 28 U.S.C.

§ 157(c). "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (citations omitted).

As a rule, in a related proceeding, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court; after review, the district court enters final judgment. 28 U.S.C. § 157(c)(1). With consent of the parties, however, the bankruptcy court may enter a final judgment in a related proceeding, subject to appeal. 28 U.S.C. § 157(c)(2). The statute is silent as to when, where and how this consent is to be given.

■ The controversy between Lowell and Chase before the bankruptcy court, involving as it did the claims of third parties over property formerly occupied by the debtor, was not a core proceeding. *See Gardner,* 913 F.2d at 1518; *In re Xonics,* 813 F.2d 127, 131–32 (7th Cir.1987). Initially, the dispute involved the liquidation of G.S.F.'s property to satisfy the debtor's obligations to Chase and the determination of compensation due Lowell for the use of the premises; those aspects of the case may indeed have been core, and were resolved by the December 18 Agreement. The bankruptcy court found that Lowell's later claims for damage to the premises were related to the December 18 Agreement itself, which required Chase to "restore the premises."

The bankruptcy court focused on the possible effects on the G.S.F. estate as another link relating the dispute to the administration of the estate. As justification for the injunction the bankruptcy court set forth two effects the state litigation would have on the G.S.F. bankruptcy case. Delay in administration of the estate was the first: The estate could not be closed and the

---

6. The All Writs Act, 28 U.S.C. § 1651, provides Article III courts with statutory authority to issue such an injunction. Section 105 of the Bankruptcy Code was apparently intended to extend such authority to the bankruptcy courts.

2 *Collier on Bankruptcy* § 105.01[1] (15th ed. 1991). As we discuss *infra,* the Anti–Injunction Act, 28 U.S.C. § 2283, and various equitable considerations, limit the injunctive power of the courts.

assets distributed until the termination of the litigation, because of the potential for an indemnity claim against G.S.F. should Lowell succeed in its action. Second was the direct effect on the G.S.F. estate of the potential indemnity claim itself.

We evaluate the bankruptcy court's findings as to effect on the debtor under the clearly erroneous standard of review, and we cannot say that they are clearly erroneous. By far the more significant of the two effects is the latter. Chase has, throughout the controversy, denied liability for environmental damage and has asserted that the responsibility for any such damage rests with G.S.F. In its answer to Lowell's Second Amended Motion filed with the bankruptcy court, Chase set forth a cross-claim against G.S.F. The Lowell claim, therefore, puts the G.S.F. estate at risk of liability for what could be a substantial damage award.

This risk, however, only exists if Chase is in a position to assert a cross-claim or an indemnity claim against G.S.F. Both Chase and Lowell stipulated, in the December 18 Agreement, that they would "not file a claim for administrative expenses in this case." Lowell now submits that this waiver bars Chase from pursuing any sort of action against G.S.F.

We disagree. First, the term "administrative expenses" has a particular meaning in bankruptcy. It is described in 11 U.S.C. § 503 as those expenses related to the administration of the estate, including taxes and attorney's fees. Chase's waiver of administrative expenses, therefore, can only mean that Chase could not make a claim on the G.S.F. estate for expenses such as those associated with liquidating the collateral—hiring an auctioneer, for example. It cannot be construed so broadly as to bar Chase from filing any action whatsoever against G.S.F.

Moreover, Chase timely filed a proof of claim against the estate, thereby preserving its rights. In a memorandum to the

bankruptcy court dated June 19, 1989, the Trustee in bankruptcy for the G.S.F. estate expressed his opinion that Chase would be entitled to proceed against G.S.F. for indemnity if the waiver of administrative expenses were construed so as not to bar a claim, and if the Lowell Massachusetts action were successful. The Trustee stated that were the Lowell action to proceed, it would "be impossible for the Trustee to administer the debtor's estate until the resolution of the State Court Litigation and all appeals therefrom." The Trustee also noted that neither Chase Manhattan nor Lowell had filed a proof of claim in the G.S.F. case and that, as a result, neither was in a position to assert a claim against the debtor.

On these facts, we are not "left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. Therefore we cannot say that the bankruptcy court was clearly erroneous in finding that the Lowell action would affect the G.S.F. estate. The entire proceeding settled by the September 5 Stipulation and Releases, including Lowell's claims for property damage, was related to the bankruptcy case.[7]

■ Here a jurisdictional problem surfaces. Rather than submitting proposed findings to the district court for it to enter judgment as required by 28 U.S.C. § 157(c)(1), the bankruptcy court purported to enter a final order on the matter. We find, however, that this flaw was cured by the parties' consent, before the bankruptcy court, to bankruptcy court jurisdiction. *See* 28 U.S.C. § 157(c)(2).

There can be no doubt that the issue of the bankruptcy court's jurisdiction was raised, considered, and resolved in the bankruptcy court during the 1985 proceedings. Lowell initially filed its Motion for Use and Occupancy Payments with the bankruptcy court. It then sought to withdraw that motion on the ground of lack of jurisdiction. At the hearing on Lowell's

---

**7.** We have held that the bankruptcy court did not need to show effect on the debtor as of 1989 in order to issue the relitigation injunction, as a valid original judgment suffices to provide juris-

diction under § 105. It appears, however, that the court's findings as to effect on the debtor are as valid now as they were in 1989 and in 1985.

motion to withdraw, the court stated two reasons for considering the dispute within its jurisdiction as a related proceeding (effectuation of the December 18 Agreement and effect on administration of the estate). Lowell responded to the court's denial of the motion to withdraw by filing, not an interlocutory appeal, but the Second Amended Motion. Again, at hearings, the parties specifically discussed the environmental claims and the bankruptcy court stated that they would be within its jurisdiction provided they related back to the terms of the December 18 Agreement.

The determinative indication of acquiescence was the decision of Lowell and Chase to file the September 5 Stipulation and Releases with the bankruptcy court, for entry as a final judgment. There can be no clearer sign of consent. Finally, neither party appealed the bankruptcy court order, on jurisdictional or any other grounds.

■ That the parties' consent was manifested before the bankruptcy court, rather than the district court, is not fatal. Where an entire Title 11 proceeding has been properly referred to the bankruptcy court by the district court, consent to bankruptcy jurisdiction over related matters may be given to the bankruptcy court. *Matter of Majestic Energy Corp.*, 835 F.2d 87, 91 (5th Cir.1988); *In re Southern Ind. Banking Corp.*, 809 F.2d 329, 331 (6th Cir.1987); *In re K–ROM Const. Corp.*, 46 B.R. 745, 749–50 (S.D.N.Y.1985).

■ Nor is it necessary that consent be explicit. Rather, implied consent will suffice. *In re Mann*, 907 F.2d 923, 926 (9th Cir.1990) (consent jurisdiction where party filed the proceeding in bankruptcy court and never objected to jurisdiction); *In re Daniels–Head & Assoc.*, 819 F.2d 914, 919 (9th Cir.1987) (absence of timely objection constitutes implied consent); *In re Southern Ind. Banking Corp.*, 809 F.2d at 331

(same); *In re I.A. Durbin*, 62 B.R. 139, 144 (S.D.Fla.1986) (consent implied where a party voluntarily joined a related counterclaim); *In re Hatfield*, 117 B.R. 387, 389 n. 1 (Bankr.C.D.Ill.1990) (consent where creditor failed to pursue jurisdictional issue).

The record indicates that both Lowell and Chase consented to have the bankruptcy court enter a final judgment over their dispute. Thus, the bankruptcy court had jurisdiction to enter a valid order, and that order provided the power for the relitigation injunction to issue.

### The Anti–Injunction Act

■ Lowell argues that the Anti–Injunction Act, 28 U.S.C. § 2283, bars the issuance of a relitigation injunction in this case. The Anti–Injunction Act prohibits federal courts from enjoining state court proceedings except in three limited situations: as authorized by statute, in aid of the jurisdiction of the federal court, and to protect a federal judgment. We are not convinced that the Anti–Injunction Act is applicable. By its terms, the Anti–Injunction Act does not govern bankruptcy courts. Its provisions restrict only the "courts of the United States," defined as including "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451. Moreover, § 105 of the Bankruptcy Code was apparently intended to be an "as expressly authorized by Act of Congress" statutory exception to the Anti–Injunction Act. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5815 (Section 105 is "anauthorization [sic], as required under 28 U.S.C. 2283, for a court of the United States to stay the action of a State court").[8] *See also In re Fussell*, 928 F.2d at 716 & n.

---

**8.** We say that this exception was the "apparent" purpose of § 105 because the jurisdictional revisions to the Bankruptcy Act in 1984, spurred by the Court's holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), resulted in the deletion of several of the 1978 Bankruptcy Reform Act companion sections to § 105. The 1978 Senate Report presumed that these companions would be intact. *See Collier on Bankruptcy* § 105.01[1].

4; *Manville Corp. v. Equitable Security Holders Committee*, 801 F.2d 60, 63 (2d Cir.1986); *In re Davis*, 691 F.2d 176, 177–78 (3d Cir.1982).

Nevertheless, it may be appropriate to use Anti–Injunction Act principles, by extension if not directly, to measure the power of the bankruptcy court in this situation. First, it seems probable that the statutory exception of § 105 is directed at the typical bankruptcy injunction situation (the automatic stay, for example) rather than at the rather unusual relitigation injunction presented here. It seems unlikely that the bankruptcy courts would enjoy *more* power over state proceedings than do the "courts of the United States." Thus, the Anti–Injunction Act limits applicable to the relitigation exception may be relevant even though the bankruptcy courts also fit within the statutory exception. Second, the "Supreme Court has held that the type of statutory exception set forth in the Anti–Injunction Act does not put into 'question or qualify in any way the principles of equity and comity that must restrain a federal court when asked to enjoin a state court proceeding.'" *In re Davis*, 691 F.2d at 178 (quoting *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972)). This suggests that a court contemplating a relitigation injunction, even one authorized under the statutory exception, should consider the principles articulated by the Court for such an injunction.

We need not resolve this issue today, because we find that even if the Anti–Injunction Act does apply, it is not violated by the injunction in this case.

The third exception to the Anti–Injunction Act makes the relitigation injunction possible by enabling the federal court to halt state litigation which merely rehashes a previous federal proceeding.[9] *See, e.g., De Cosme*, 874 F.2d at 68. The exception is narrowly construed:

**9.** That the injunction in this case issued against a party, Lowell, rather than against a court or an action, is irrelevant. For purposes of the Anti–Injunction Act a restraint on a party is equivalent to a restraint on a proceeding. *At-*

[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. Moreover, *Atlantic Coast Line [R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) ], illustrates that this prerequisite is strict and narrow. The Court assessed the precise state of the record and what the earlier federal order *actually* said; it did not permit the District Court to render a *post hoc* judgment as to what the order was *intended* to say.

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988) (emphasis in original); *see also De Cosme*, 874 F.2d at 68. Thus the question remaining is whether, in fact, the claims asserted by Lowell in the Massachusetts action were actually decided by the bankruptcy court in September, 1985.

On their faces, the Stipulation and Releases executed on September 5, 1985, could hardly be more inclusive. Lowell released Chase from any and all claims related to any and all dealings between Lowell and Chase concerning the G.S.F. property, "including, but not limited to, any and all events or matters that have been, were, or could have been raised in connection with" Lowell's Second Amended Motion. Lowell submits two reasons why the environmental claims do not fall within this apparently all-encompassing release. First, Lowell argues that the Second Amended Motion sought damages for use and occupancy only, and that it did not state any claim for violation of the Massachusetts environmental statute. The allegations of damage from removal of collateral and hazardous waste contained in paragraphs 20 and 21 of the motion merely served as support for the use and occupancy claim, according to Lowell. Second, Lowell argues that the handwritten exclusion

*lantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970); *Gloucester Marine Railways Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir.1988).

in its Release leaves room for assertion of claims against Chase, provided that Chase was acting in the capacity of an agent for G.S.F. when it occupied the premises.

As to the first asserted reason, we cannot agree with Lowell's construction of the September 5 Stipulation and Releases, nor of the Second Amended Motion. To begin with, the motion sought relief in the form of "damages" for "damage suffered as a result of Chase's acts and omissions," above and beyond amounts due for use and occupation. Thus it would seem that paragraphs 20 and 21 served as independent bases for relief. That the hazardous waste claim was not framed within Mass.Gen.L. ch. 21E is of no consequence; in any event, paragraph 21 does reference the statute in defining hazardous material. Moreover, the Stipulation and Releases go well beyond the Second Amended Motion in their coverage. Not only claims actually asserted, but any that could have been asserted, and indeed any disputes related to the transaction, were released.

The comments of Lowell's counsel during various hearings before the bankruptcy court make it crystal clear that Lowell realized that damage from hazardous waste and removal of collateral fell within the bounds of the dispute. Finally, the bankruptcy court plainly believed that the state claims had been resolved by the September 5 Stipulation and Releases, calling Lowell's Massachusetts action "a blatant attempt ... to get a second bite." We are mindful of the Supreme Court's admonition in *Chick Kam Choo* that it is our task to determine "what the federal order *actually* said," without relying on the lower court's opinion as to what was intended. 486 U.S. at 148, 108 S.Ct. at 1690. Nevertheless, it seems appropriate to pay some heed to a judge's view as to what actually happened in the earlier proceeding, especially where, as here, the same judge stayed with the case over its life span. And in this case, the judge—as well as everyone else involved—apparently believed that the environmental claims fell within the September 5 Stipulation and Releases.

Lowell's second argument is no more persuasive. The hastily written exclusion from the Release purported to retain "any claims of whatever nature" against G.S.F. and its "officers, directors, and agents." If, as Lowell now urges, we construe the exclusion to include Chase as an agent for G.S.F., it appears to us that the entire Release becomes illusory. The more obvious reading preserves Lowell's claims against G.S.F. and parties acting on behalf of G.S.F., with the exception of Chase, in whose favor run the general terms of the Release. Any other result is unacceptable.

It appears from the record that Lowell's environmental claims were actually encompassed in the 1985 bankruptcy court judgment. That judgment therefore satisfies the Supreme Court's requirement for issuance of a relitigation injunction. *See Chick Kam Choo*, 486 U.S. at 148, 108 S.Ct. at 1690.

## CONCLUSION

To recap: The bankruptcy court, in 1985, had jurisdiction to, and actually did, enter a final judgment covering the claims raised by Lowell in its subsequent state court action. The bankruptcy court, in 1989, had both power (under 11 U.S.C. § 105) and justification (under the Anti–Injunction Act) to enjoin Lowell from pursuing its action in Massachusetts. This court has jurisdiction over the appeal. We therefore vacate the order of the district court, and remand to the bankruptcy court for reentry of the injunction. Costs to appellant.

*Vacated and remanded.*

## STATUTORY APPENDIX

**11 U.S.C. § 105. Power of court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) [Omitted]

(c) [Omitted]

**11 U.S.C. § 503. Allowance of administrative expenses**

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making

a substantial contribution in a case under chapter 9 or 11 of this title; or

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(6) the fees and mileage payable under chapter 119 of title 28.

**28 U.S.C. § 157. Procedures**

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b) (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or

unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such a proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge only after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

## 28 U.S.C. § 158. Appeals

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the

judicial district in which the bankruptcy judge is serving.

(b) (1) The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

(2) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

(3) No appeal may be referenced to a panel under this subsection unless the district judges for the district, by majority vote, authorize such referral of appeals originating within the district.

(4) A panel established under this section shall consist of three bankruptcy judges, provided a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed or designated under section 152 of this title.

(c) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

(d) The courts of appeals shall have jurisdiction from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

## 28 U.S.C. § 1651. Writs

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

## 28 U.S.C. § 2283. Stay of State court proceedings

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.